ROBERT S. LARSEN, ESQ.
Nevada Bar No. 7785
MEGAN H. HUMMEL, ESQ.
Nevada Bar No. 12404
**GORDON & REES LLP**
3770 Howard Hughes Parkway Suite 100
Las Vegas, Nevada 89169
Telephone: (702) 577-9300
Facsimile: (702) 255-2858
Email: rlarsen@gordonrees.com
       mhummel@gordonrees.com

**Attorneys for Defendant
CREDIT MANAGEMENT LP**

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KIM MCGOWAN, an individual<br><br>Plaintiff,<br><br>vs.<br><br>CREDIT MANAGEMENT LP, a Nevada Limited Liability Partnership, DOE Corporation I through X, inclusive, and ROE Corporations I through X, inclusive,<br><br>Defendant. | CASE NO. 2:14-cv-00759-APG-VCF<br><br>**DEFENDANT CREDIT MANAGEMENT LP'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT** |

-1-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff filed her Complaint against Credit Management LP ("Credit Management") on or about May 14, 2014 seeking damages for alleged violations of the Fair Debt Collections Practices Act ("FDCPA") and Telephone Consumer Protection Act ("TCPA"). Each of Plaintiff's causes of action is based on the following allegations:

(1) "Defendant called Plaintiff's cellular phone with no prior permission given by Plaintiff, demanding payment of an alleged debt;"

(2) Credit Management "called Plaintiff's cellular phone without first verifying the alleged debt and without permission to call, and asserted a right which it lacks, to wit, the right to enforce a debt;" and

(3) Credit Management used a robo-calling, automatic dialing phone system that did not allow plaintiff to speak to an individual, and/or forced plaintiff to admit the debt in order to speak to a representative."

Complaint (Dkt. 1, ¶¶ 6, 7, 11).

Plaintiff alleges that these calls violated the TCPA because they were made at times not authorized by law and "were of such a nature that they were harassment under the TCPA." Dkt. 5 ¶ 20. Based on these vague and unsupported allegations, Plaintiff seeks statutory, actual and punitive damages as well as attorneys' fees and costs. Plaintiff's punitive damage demand is based on the conclusory and unsubstantiated claim that the acts "were committed with actual knowledge or knowledge fairly implied on the basis of objective circumstances."

The undisputed material facts establish that none of Plaintiff's allegations have any merit. Thus, Credit Management requests that judgment be entered in its favor and against Plaintiff.

## II. STATEMENT OF FACTS

In or about 2010, Plaintiff entered into an agreement with Keyon for internet service at her residence in Las Vegas, Nevada. (*Declaration of Daniel C. Zimmerman ("Zimmerman Decl.")*, ¶ 6). In signing up for broadband internet service with Keyon, Plaintiff provided certain

1  information, including a telephone number—XXX-XXX-8832—at which she could be
2  contacted. (*Zimmerman Decl.*, ¶ 7). Plaintiff set-up an automatic payment plan for her account.
3  (*Zimmerman Decl.*, ¶ 8).

4  In or about June 2012, DIGIS purchased specific assets from Keyon Communications
5  Holdings Inc. ("Keyon"), an internet service provider in Nevada. (*Zimmerman Decl.*, ¶ 9.)
6  Through the acquisition, DIGIS acquired specific customer accounts of Keyon, including
7  existing and outstanding accounts. Plaintiff Kim McGowan's account was one of the accounts
8  acquired. (*Zimmerman Decl.*, ¶ 10).

9  Shortly after August 2013, Plaintiff's automatic payment plan ceased. (*Zimmerman
10  Decl.*, ¶ 11). At the time, there was an outstanding balance on her account. (*Zimmerman Decl.*,
11  ¶ 12).

12  Credit Management, among other things, works to collect outstanding receivables for
13  third parties, including DIGIS, an internet service provider. *(Declaration of Nelson Wilson
14  ("Nelson Decl."), ¶ 5).* One system that Credit Management uses to collect on delinquent
15  accounts is a telephone system that does not have a random or sequential number generator.
16  *(Nelson Decl., ¶ 6).* Rather, the telephone numbers that were to be called on any particular day
17  word loaded into the telephone system on that day in what is referred to as a Calling Campaign.
18  *(Nelson Decl., ¶ 7).* The Calling Campaign controls if the loaded telephone numbers can be
19  called based on a complex set of programming that evaluates: federal and state regulations
20  regarding debt collection; time zones relative to the then local time in the area code of the
21  number to be called; when the last call was placed to a particular telephone number; and other
22  internal collection scoring metrics relating to a subject account. *(Nelson Decl., ¶ 8).* The Calling
23  Campaign then controls what order the telephone numbers that are eligible to be called are
24  called, how many times calls may be placed to the same number during the same Calling
25  Campaign, and what happens if there is a live connection. *(Nelson Decl., ¶ 9).*

26  Further, not all of the delinquent accounts that Credit Management is working on are
27  called every day. *(Nelson Decl., ¶ 10).* Thus, Credit Management does not attempt to call every
28

telephone number in it database. *(Nelson Decl., ¶ 11)*.

On or about November 24, 2013, Credit Management was engaged by DIGIS to collect the unpaid debt owed by Plaintiff for broadband internet service. *(Nelson Decl., ¶ 12, see also, Zimmerman Decl., ¶ 13)*.

On November 27, 2013, Credit Management sent its initial debt validation dunning letter in compliance with 15 U.S.C. section 1692g. *(Nelson Decl., ¶ 13)*. On November 28, 2013, Credit Management began placing telephone calls as provided by DIGIS in an attempt to collect the outstanding debt. *(Nelson Decl., ¶ 14)*.

Credit Management placed approximately 80 calls to Plaintiff's phone number between November 28, 2013 and March 7, 2014 – a 99 day time period. *(Nelson Decl., ¶ 15)*.

None of these calls were made at an inappropriate hour. *(Nelson Decl., ¶ 16)*. All of the calls were made solely for the purpose of debt collection. *(Nelson Decl., ¶ 17)*. Plaintiff never communicated with Credit Management in writing or over the phone. *(Nelson Decl., ¶ 18)*. It was not until on or about March 6, 2014 that Credit Management received a letter from Plaintiff's Counsel, Plaintiff's husband, asking Credit Management to cease calling Plaintiff, at which point Plaintiff's account was put on hold. *(Nelson Decl., ¶ 19)*. No further collection efforts were made on Plaintiff's account. *(Nelson Decl., ¶ 20)*.

Credit Management did not make more than one phone call per day. *(Nelson Decl., ¶ 21)*. Plaintiff produced a screen shot from her telephone as part of her Initial Disclosures, showing the calls from a Credit Management telephone number ending in XXX-XXX-7020 between December 31, 2013 and February 19, 2014. *(Nelson Decl., ¶ 22)*. This screen shot shows that Credit Management placed calls between 8:00 a.m. and 9:00 p.m. and that not more than one call was ever made to Plaintiff on the same day. *(Nelson Decl., ¶ 23)*.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

A party may move for summary judgment in any action or proceeding where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judgment sought by a motion

1  for summary judgment "should be rendered if the pleadings, the discovery, and the disclosure
2  materials on file, and any affidavits show that there is no genuine issue as to any material fact
3  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2)
4  (emphasis added). Summary judgment is properly granted to a defendant who shows either that
5  plaintiff cannot establish one or more essential elements of his cause of action or that there is an
6  affirmative defense that bars recovery. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S.
7  317, 325 (1986).

8  A moving defendant "is not required to conclusively negate an element of plaintiff's
9  cause of action, but rather need only put forth evidence showing plaintiff does not possess, and
10 cannot reasonably obtain, evidence necessary to establish the elements of the cause of action."
11 *Celotex Corp., supra*, 477 U.S. at 323. Once the burden shifts, "plaintiff must set forth facts
12 sufficient to establish the existence of an element essential to that party's case, and on which that
13 party will bear the burden of proof at trial." *Celotex Corp., supra*, 477 U.S. at 322. A "mere
14 scintilla of evidence" is insufficient to "defeat a properly supported motion for summary
15 judgment; instead, the nonmoving party must introduce some significant probative evidence
16 tending to support the complaint." *Fazio v. City & County of San Francisco*, 125 F. 3d 1328,
17 1331 (9th Cir. 1997).

18 In response to a summary judgment motion, "the plaintiff can no longer rest on such
19 'mere allegations' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. R. Civ.
20 P. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v.
21 Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[U]ncorroborated and self-serving testimony
22 or declarations, without more, will not create a genuine issue of material fact precluding
23 summary judgment." *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 890 (D. Ariz.
24 2007) (citing *Dubois v. Ass'n Apart. Owners 2987 Kalakua*, 453 F. 3d 1175, 1180 (9th Cir.
25 2006)).

26 Notably, Plaintiffs' evidence "cannot be based on mere speculation, conjecture and
27 inferences drawn from other inferences to reach a conclusion unsupported by any real evidence,
28

or on an expert's opinion based on inferences, speculation and conjecture." *Dunbar-Kari v. United States*, 2010 WL 4923556 *3 (E.D. Cal. Nov. 29, 2010). "When the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to ensure that the defendant prevails." *Id.*

Rule 56(a) explicitly provides that a party "may move for summary judgment identifying . . . the part of each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). This language was added to the rule in 2010 to make clear that summary judgment may be requested not only as to an entire case, or as to a complete claim or defense, but also as to parts of claims or defenses. Fed. R. Civ. P. 56, advisory committee note of 2010 ("The first sentence [of subdivision (a)] is added to make clear at the beginning that summary judgment may be requested ... as to ... part of a claim or defense."). "The standards and procedures for granting partial summary judgment, also known as summary adjudication, are the same as those for summary judgment." *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

### A.   **Plaintiff Cannot Establish One Or More Elements Of Her First Claim[1].**

Defendant did not violate 15 U.S.C. § 1692d(5) because the pattern of calls did not, as a matter of law, evince an intent to harass, abuse or annoy Plaintiff. The calls were made in a legitimate effort to collect a debt and to make contact with the debtor.

15 U.S.C. § 1692d(5) provides that:

> [a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (5) Causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

---

[1] Plaintiff's first cause of action in the Complaint inadvertently cites 15 U.S.C. § 1692d(4) in support of her claim that Credit Management "did cause plaintiff's phone to ring repeatedly for the purpose of harassing or annoying" Plaintiff. In fact, it is section 15 U.S.C. § 1692d(5) that supports this allegation. Section 1692d(5) provides that "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" is a violation. Section 1692d(4) concerns "[t]he advertisement for sale of any debt to coerce payment of the debt," which is inapplicable here.

-6-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff must put forth evidence to demonstrate that defendant acted with the intent to annoy, abuse or harass to survive summary judgment. Making phone calls in an attempt to collect a debt, without more, does not raise to the level of a Section 1692(d)(5) violation.

The case of *Beeders v Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335 (M.D. Fla 2011) is instructive here. In *Beeders*, the district court granted debt collector's motion for summary judgment to plaintiff's 15 U.S.C. § 1692d(5) claim. The court in *Beeders* found that defendant "made a series of approximately forty (40) automated telephone calls to the Plaintiff from January 2008 to May 2008, whereupon voice messages were left for him on approximately fifteen (15) occasions." *Id.* at 1336. The court further found that there was "never more than more than one call placed per day." *Id.* at 1337. Plaintiff eventually contacted the defendant and requested that defendant stop calling him, to which defendant complied." *Id.* Based on those facts, the court held that "Defendant's calls did not constitute 'egregious conduct' meant to harass, annoy, or abuse the Plaintiff." *Id.* at 1338. (citing *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350, at *5 (M.D. Fla 2010) (noting that even though the call log showed that the defendant placed up to twenty-nine (29) calls in a single month and up to four (4) calls in a single day, nothing in the record indicated "that the phone calls were intended to be annoying, abusive, or harassing.").

In *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301 (M.D. Fla 2010), the district court found that a debt collector's repeated phone calls to debtors father and voice messages intended for the debtor left on her father's phone was not a violation of Section 1692d(5). CBE obtained the telephone number for Ms. Tucker through a Lexis Nexis Accurint for Collections search. CBE made a total of 57 calls to the telephone number it located, but not more than <u>seven calls in one day</u>, and left a total of six identical voice messages for debtor. In granting CBE's motion for summary judgment, the court held that "Plaintiff has not demonstrated that CBE engaged in oppressive conduct such as repeatedly making calls after it was asked to ceased. Notably, Defendant never even spoke to Plaintiff; Defendant was not notified that it could not reach Stacey Tucker at the relevant telephone number and Plaintiff did not request that CBE cease

-7-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

calling." *Id.* at 1305. The *Tucker* court went on to find that "[w]hile the number of calls made during the relevant time period does seem somewhat high, Defendant only left a total of six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message." *Id.* The evidence in *Tucker* demonstrated to the court that "CBE placed each of its telephone calls with an intent to reach Stacey Tucker rather than an intent to harass Plaintiff. Thus, the circumstances here do not constitute a violation of Section 1692d(5) as a matter of law." *Id.*

Further, *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223 (D. Kan. 2011) is also instructive. In *Carman*, the court found, in granting defendant's motion for summary judgment, that "there is no evidence of an unacceptable pattern of calls" and that "[t]he record is lacking of any indicia of the type of egregious conduct raising triable issues of fact when coupled with a high call volume." *Id.* at 1232. In *Carman*, CBE, "called plaintiff's home number 0-4 times a day and called her work number 0-3 times a day, for a total of 149 calls to plaintiff during a two month period." *Id.* at 1227. CBE did make contact with plaintiff on one occasion and she stated that she would call back, which she never did. In granting CBE's summary judgment motion, the court pointed out that "even 'daily' calls, unaccompanied by other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury." *Id.* at 1230. Such "egregious conduct" is necessary to "evince an intent to annoy, abuse or harass." *Id.* at 1232.

Here, there is no evidence of any of the "egregious conduct" required to overcome a motion for summary judgment. Plaintiff has not produced any evidence, or even alleged, that Credit Management called at odd hours, called after being instructed not to, or called after leaving a message. Plaintiff's opinion that the calls were harassing "is not evidence of [Credit Management]'s intent" and the evidence before the Court demonstrates just the opposite. *Carman*, 782 F. Supp. 2d at 1232.

-8-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Credit Management placed phone calls to the number that was provided by Plaintiff when she applied for internet service with Keyon, not a number that was located through an Accurint search. Credit Management placed no more than one call per day, unlike the up to seven calls a day in *Tucker*. Even if the Court believes Plaintiff's self-serving testimony that she received up to four calls a day, such a pattern is still inadequate to demonstrate the threshold intent to harass, abuse or annoy. Furthermore, Credit Management ceased making phone calls after receiving a letter from Plaintiff's attorney and made no further collection efforts after that point.

### B. Plaintiff's Second Claim Is Not Proper.

Plaintiff's second claim is labeled as one fore "Statutory Civil Penalties Under the FDCPA." This claim is redundant of Plaintiff's first claim in that it is nothing more than a prayer for relief for Credit Management's alleged violations of the FDCPA.

The Complaint alleges that "Section 814(a) of the FDCPA [] authorize the Court to award monetary civil penalties for violations of the FDCPA when such violations were committed with actual knowledge or knowledge fairly implied on the basis of objective circumstances." Despite the fact that Section 814(a) of the FDCPA (15 U.S.C. § 1692l) governs administrative enforcement of the FDCPA by the Federal Trade Commission, this claim must fail because it is nothing more than a prayer for relief for the alleged violations of Section 1692d set forth in the first claim.

Therefore, because the second claim is not a recognized claim and because Plaintiff's first claim for violation of the FDCPA fails, so to must this claim fail.

### C. Plaintiff Cannot Establish One Or More Elements Of Her Third Claim.

Plaintiff's third claim alleges that Credit Management violated the TCPA by "calling the plaintiff on her cellular phone . . . and by calling the plaintiff at times not authorized by law." (Dkt. 1, ¶ 19.) Plaintiff further alleges that Credit Management's calls to her cellular phone were made without prior written permission and constituted harassment because they "were made on a daily basis." (Dkt. 1, ¶ 20.) Plaintiff claims that such conduct violated 47 U.S.C. § 227(b)(1)(A) and 227(b)(1)(A)(iii). (Dkt. 1, ¶ 19.)

1   The TCPA makes it unlawful for a person to call the cellular telephone number of any
2   other person using an automatic telephone dialing system without the recipient's prior express
3   consent. 47 U.S.C. § 227(b)(1)(A)(iii); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707
4   F.3d 1036, 1043 (9th Cir. 2012). Plaintiff's claims fail because: 1) Plaintiff did consent to the
5   calls; and 2) there is no evidence that Credit Management called Plaintiff using an automatic
6   telephone dialing system ("ATDS").

### 1. Plaintiff Provided Consent.

As noted, the TCPA makes it unlawful for a person to call the cellular telephone number of any other person using an automatic telephone dialing system without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Thus, the TCPA expressly exempts from liability a caller who has consent to call the cellular telephone number. 47 U.S.C § 227(b)(1)(A).

Although the TCPA does not define "prior express consent," Congress has "delegated authority to the Federal Communications Commission ("FCC") to prescribe regulations that implement TCPA's provisions." *Olney v. Job.com, Inc.*, 2014 WL 1747674, at *4 (E.D. Cal. May 1, 2014) (citing 47 U.S.C. §§ 227(b)(2), (f)). "The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals." *Id.* (citations omitted).

In a 1992 Report and Order, the FCC stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at that number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 ¶ 31 (Oct. 16, 1992). In a subsequent ruling, the FCC clarified that "autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559 ¶¶ 1, 9 (Jan. 4, 2008). In such a case, "[p]rior express consent is . . . granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during

1  the transaction that resulted in the debt owed." *Id.* ¶ 10.

2  Here, as discussed above, Plaintiff provided her telephone number to Keyon regarding her credit account. That account was then purchased by DIGIS. DIGIS then provided that number to Credit Management relative to assignment of the account for collection. Thus, Plaintiff provided consent to be called at the number provided.

### 2. Credit Management Did Not Use an ATDS.

In order to establish a violation of the TCPA, the plaintiff must prove that the defendant used an ATDS as defined in 47 U.S.C. § 227(a)(1)(A) and (B).

An ATDS is defined as equipment that:

> has the capacity (A) to store or produce telephone numbers to be called, <u>using</u> a random or sequential number generator; and (B) to dial such numbers.

47 U.S.C. § 227(a)(1) (emphasis added).

"In construing the provisions of a statute, courts first look to the language of the statute to determine whether it has a plain meaning." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (citing *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)). "The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Id.* (citing *McDonald*, 548 F.3d at 780 (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (internal quotation marks omitted))). As the Ninth Circuit has made clear, the definition of an ATDS is clear and unambiguous; thus the court may not look to any other source for guidance as to the meaning of an ATDS. *See id.*

On October 3, 2013, the California Superior Court for the County of Orange decided this specific issue on summary judgment, i.e. whether the Credit Management's technology met the definition of an ATDS under the TCPA. The court cited to *Satterfield* and found for Credit Management, stating:

> the use of a number generator is required in order for [defendant's] calling technology to be considered an ATDS. Defendant submitted the declaration of [its Director of Compliance and

-11-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

> Quality Assurance] to support its contention that [defendant's] calling technology does not have a number generator. Plaintiff failed to offer any evidence in rebuttal. Thus, the uncontroverted evidence presented is that [defendant's] calling technology does not have a number generator. Therefore [defendant's] calling technology does not meet the requirements of an ATDS as defined by the TCPA. As such, Defendant's Motion for Summary Adjudication is GRANTED.

*Stockwell v. Credit Management, L.P.*, Case No. 30-2012-00596110-CU-NP-CXC, Order of Judge Ronald Bauer, p. 2.

Shortly after the *Stockwell* case, Judge Lasnik of the Western District of Washington held when granting a defendant's motion for summary judgment that:

> [Plaintiff] has failed to provide the Court with any evidence that either TaxiMagic or the modem has the capacity to randomly or sequentially generate telephone numbers to be stored, produced, or called.

*Gragg v. Orange Cab Co*, 2014 WL 494862, *3 (W.D. Wash., Feb. 7, 2014)(emphasis in the original).

Then, Judge Baylson of the Eastern District of Pennsylvania similarly held that:

> Plaintiff has not offered any evidence to show that Yahoo's system had the capacity to randomly or sequentially generate telephone numbers (as opposed to simply storing telephone numbers), as required by the statutory definition of ATDS. The Court thus finds that Yahoo did not send text messages to Plaintiff via an ATDS and, therefore, judgment must be granted in favor of Yahoo.

*Dominguez v. Yahoo!, Inc.*, 2014 WL 1096051, *6 (E.D. Pen., March 20, 2014.)

Plaintiff may try to argue that the calling pattern and frequency of calls supports a triable issue of material fact relative to the ATDS issue. This is incorrect, however, because as noted in multiple other cases:

> 'Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111–1111, (111) 111–1112, and so on."

*Gragg v. Orange Cab Co*, 2014 WL 494862, *3 (W.D. Wash., Feb. 7, 2014) (citing to, *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F.Supp.2d 723, 725 (N.D.Ill.2011); *Dominguez v. Yahoo!, Inc.*, 2014 WL 1096051, *6 (E.D. Pen., March 20, 2014.)(*Citing to, Gragg v. Orange Cab Co*,

2014 WL 494862, *3 (W.D. Wash., Feb. 7, 2014).)

Here, Credit Management's telephone system does not have a random or sequential number generator. Thus, Credit Management's telephone system does not meet the requirements of an ATDS. Therefore, Plaintiff cannot establish the threshold element for violation of the TCPA.

## IV. CONCLUSION

There are no triable issues of material fact as to Plaintiff's causes of action for violations of the FDCPA and TCPA. Plaintiff provided her telephone number when she signed up for her internet service. The calls made by Credit Management to collect on her outstanding debt for that internet service was not done using an ATDS and the pattern of calls made to that number fall well short of the standard required to constitute a violation of Section 1692d(5) of the FDCPA. Therefore, Credit Management's Motion for Summary Judgment as to Plaintiff's entire Complaint should be granted.

Dated this 3rd day of February, 2015.

**GORDON & REES LLP**

By: /s/ Robert S. Larsen

ROBERT S. LARSEN, ESQ.
NEVADA BAR NO. 7785
MEGAN H. HUMMEL, ESQ.
NEVADA BAR NO. 12404
3770 Howard Hughes Pkwy, Ste. 100
Las Vegas, Nevada 89169

*Attorney for Defendant*
***CREDIT MANAGEMENT LP***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am over eighteen years, not a party to the within action, and am an employee of the law firm **GORDON & REES LLP** On the 3rd day of February, 2015 and pursuant to Fed. R. Civ. Pro. 5, I served via CM/ECF and/or deposited for mailing in the U. S. Mail a true and correct copy of the foregoing **DEFENDANT CREDIT MANAGEMENT LP'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT** postage prepaid and addressed (if necessary) to:

Dale K. Kleven, Esq.
5550 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149
dale@hrlnv.com
Attorney for Plaintiff

_Andrea Montero_
An Employee of GORDON & REES LLP