**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| KIM MCGOWAN,<br><br>                    Plaintiff,<br><br>vs.<br><br>CREDIT MANAGEMENT LP,<br><br>                    Defendant. | Case No. 2:14–cv–759–APG–VCF<br><br>**ORDER**<br><br>**MOTION FOR RECONSIDERATION (#32)** |

This matter involves Kim McGowan's civil action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, against Credit Management LP. Before the court is Credit Management's Motion for Reconsideration (#32). For the reasons stated below, Credit Management's Motion for Reconsideration is granted in part and denied in part.

**BACKGROUND**

Between December 26, 2013, and March 4, 2014, Credit Management LP allegedly called Kim McGowan's cell phone 62 times regarding an unpaid debt. (Compl. (#1) at 2 ¶ 6). McGowan claims that she did not authorized Credit Management's repeated calls, owe Credit Management debt, or know on whose behalf Credit Management may have been calling. (*Id.* at ¶¶ 3–5).

On May 14, 2014, she commenced this action against Credit Management LP under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* On July 31, 2014, the parties held a Rule 26(f) conference. (Doc. #9 at 1:25). This set August 14, 2014 as the deadline to serve initial disclosures. *See* FED. R. CIV. P. 26(a)(1)(C). By August 15, 2014, McGowan alleged that she had not received Credit Management's initial

1

disclosures or any information regarding the identity of the alleged creditor. *See* (Pl.'s Reply (#17) at 3:4–5).

On November 6, 2014, McGowan served her First Request for Production of Documents on Credit Management. *See* (Doc. #11 at 2 ¶ 4). She sought, *inter alia*, information "evidencing the existence of an alleged debt owned by Plaintiff." (*Id*. at 4:4–5). On December 4, 2014, the deadline to file "[a]ll discovery and discovery-related motions" expired. (Doc. #9 at ¶ 10).

On December 15, 2014, Credit Management responded to McGowan's Request for Production of Documents with boilerplate objections. *See generally* (Doc. #11 at Ex. 1). Under the District of Nevada's Local Rules, December 15, 2014 was also the last day to move to extend the discovery cutoff date. *See* (Doc. #9 at ¶ 8); LR 26-4.

On December 31, 2014—four days before the discovery cutoff date—Credit Management disclosed the identity of the original creditor for the first time. (Kleven Aff. (#21-1) at ¶ 8); (Mins. Proceedings #30). The original creditor was an internet service provider called KeyOn. (*Id*.)

This revelation "shocked" McGowan. *See* (Mins. Proceedings #30). In 2010, McGowan entered into an agreement with KeyOn for internet service three to four years prior. (Doc. #13 at 2:25). Allegedly unbeknownst to her, another internet service provider, DIGIS, purchased some of KeyOn's existing and outstanding accounts, including McGowan's account, in 2012. (*Id*. at 3:4–8). When McGowan's automatic payment plan ceased, DIGIS retained Credit Managed to collect McGowan's outstanding debt. (*Id*. at 3:12–13).

As a result of this revelation, on January 2, 2015, McGowan filed an untimely Motion to Compel, arguing that Credit Management should produce documents and a Rule 30(b)(6) witness related to KeyOn. *See* (Doc. #11). On February 23, 2015, McGowan filed an untimely Motion to Extend the Discovery Cutoff Date. *See* (Doc. #21). The court heard oral argument on both motions on March 25, 2015.

During the hearing, McGowan expressed frustration with Credit Management's late disclosure of KeyOn, which occurred four days before the discovery cutoff date and sixteen days after McGowan could have moved to extend discovery. *See* (Mins. Proceedings #30). McGowan suggested that Credit Management's late disclosure was intentional: "It's like they calendared it!" (*Id*.)

The court asked Credit Management why KeyOn's identity was not disclosed sooner. There was no adequate explanation:

| | |
|---|---|
| The Court: | Okay, when did you guys first learn about KeyOn? |
| Defense Counsel: | The day before Plaintiff's deposition. |
| The Court: | And why was that? |
| Defense Counsel: | Um. . . if you're asking why we didn't know from the beginning, I can't answer that. If— in regards to why— |
| The Court: | Well, was it that no one in your law firm tried to figure that out or that the client was not giving you full answers to your investigation? You're required to investigate the claims right? |
| Defense Counsel: | Yes, we are your Honor. |
| The Court: | Okay, so why didn't the client tell you who it was? |
| Defense Counsel: | I believe the client referred to the account notes and it may have been an error that we didn't see that it was an account that was assigned. But in any case if your Honor will entertain a few moments— |
| The Court: | Sure, yeah. I'd like to know. |
| Defense Counsel: | We candidly admitted that we did not have a copy of the contract. We never tried to withhold anything. If you look at our discovery responses, we told Plaintiff we looked, we can't locate the contract, we'll keep looking. As far as the identity of KeyOn, I myself found that out the day before deposition. I don't have much to say on that other than— |
| The Court: | Well, what did you do that day when you found it out that you couldn't have done back when you had to do the initial disclosures? |

[. . .]

| | |
|---|---|
| Defense Counsel: | So I went back to the client, and I said we have this deposition tomorrow. I said I'd make a good faith effort to find any more information that is discoverable, that would be okay releasing and the issue of KeyOn came up. We don't have any paperwork or documentation between Ms. McGowan and KeyOn. |
| The Court: | Right. So what did your client rely on in telling you that KeyOn was the assignor? [ . . . ] How did your client find out it was KeyOn? |
| Defense Counsel: | I would venture that the client knew it was KeyOn and it was just a miscommunication as to whether we knew it was KeyOn. |
| The Court: | Alright. Anything else you want to add? |
| Defense Counsel: | No. . . |

(Mins. Proceedings (#30) at 26:40–30:02).

The court subsequently entered an Order and Report & Recommendation denying McGowan's motions and precluding Credit Management from "introducing evidence that McGowan is or was indebted to KeyOn." (Doc. #31). In pertinent part, the court stated,

> The record reflects that both parties have been less than diligent in conducting discovery. Credit Management failed to timely serve initial disclosures or substantive discovery responses. McGowan failed to timely move to compel, timely move to extend the discovery cutoff date, and timely file a reply brief.
>
> [. . .]
>
> "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them." *Leedom v. Int'l Bhd. of Elec. Workers, Local Union No. 108, AFL-CIO*, 278 F.2d 237, 244 (D.C. Cir. 1960) (citing *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)). Application of the rules promotes justice here. Credit Management delayed complying with its duty to disclose under Rule 26(a) until four days before discovery closed. It should, therefore, try the case as if the information was never disclosed. *See* FED. R. CIV. P. 37(c)(1). McGowan similarly delayed moving to compel or moving to extend discovery until discovery closed. She, too, should try her case as if she never moved to compel or extend the discovery cutoff date. *See Mammoth Recreations, Inc.*, 975 F.2d at 610.

(Doc. #31 at 3:7–10, 10:10–18).

Now, Credit Management asks the court to reconsider its preclusion recommendation. It contends that the court may have misconstrued the record and erroneously concluded that preclusion is warranted. (Doc. #32 at 2:10–13). Alternatively, Credit Management requests the court to clarify its order "to ensure that its recommendation is limited to evidence of indebtedness to KeyOn and permit the introduction of evidence proving Plaintiffs' indebtedness to DIGIS." (*Id.* at 3:10–12).

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) states that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for "any . . . reason that justifies relief." FED. R. CIV. P. 60(b)(6); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

A motion to reconsider must provide a court with valid grounds for reconsideration by: (1) showing some valid reason why the court should reconsider its prior decision, and (2) setting forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citing *All Hawaii Tours Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648–49 (D. Haw. 1987)).

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Nunes v. Ashcroft*, 375 F.3d 805, 807 (9th Cir. 2004); *School Dist. No. IJ, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The disposition of a motion for reconsideration is within the district court's discretion. *See Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 915 (9th Cir. 2006).

**DISCUSSION**

Credit Management's Motion for Reconsideration is denied because it failed to present "facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure*, 256 F. Supp. 2d at 1183. The motion raises two issue: (1) whether the court misconstrued the record and thereby lacked a basis for imposing a preclusion sanction and (2) whether the court's recommendation of preclusion was an appropriate sanction. Each is addressed below.

**I.**  **Whether the Court Misconstrued the Record**

Credit Management first contends that the court lacked a basis to impose a sanction because the court "may have misunderstood the relationship between KeyOn and DIGIS." (Mot. #32 at 2:11–12). Credit Management objects to two statements from the court's previous order: (1) "Credit Management failed to timely serve initial disclosures or substantive discovery responses" and (2) "Credit Management's defense is predicated on the existence of a creditor whom it failed to identify until four days before discovery closed." (Mot. #32 at 2:6–9) (citing Order #31 at 3:7–8, 4:20–21).

Credit Management contends that these statements "do not accurately reflect the record" because Credit Management served initial disclosures on August 14, 2014, which referenced DIGIS. (Doc. #32 at 2:10–20). Credit Management also asserts that "KeyOn, the original creditor, was not a client of Credit Management." (*Id.*) This is presumably why KeyOn was not disclosed. Credit Management's argument fails as a matter of law.

As stated in the court's previous order, Rule 26(a) provides that "a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information; [and] (ii) a copy . . . of all documents . . . that the disclosing party . . . may use to support its claims or defenses." (Order #31 at 3:17–20) (quoting FED. R. CIV. P. 26(a)(1)(A)(i)–(ii)). The rule does not permit a party to omit from an initial disclosure an

individual who is "likely to have discoverable information" because that person is not a party's client. This, however, is what Credit Management argues: "KeyOn, the original creditor, was not a client of Credit Management." (Doc. #32 at 2:20).

It is similarly inapposite that DIGIS and Credit Management lacked documents "related to the original creditor, KeyOn." (*Id.* at 2:22–23). Credit Management was required to disclose KeyOn's identity. *See* FED. R. CIV. P. 26(a)(1)(A)(i). Credit Management does not argue that it did not know that DIGIS bought KeyOn's clientele or that it did not know that McGowan was indebted to KeyOn.

Credit Management also argues that the court's basis for imposing a preclusion sanction is mistaken because McGowan "never served interrogatories requesting the identity of an original creditor" or "attempt to subpoena records or depose any individual from DIGIS." (Doc. #32 at 3:4–4). McGowan's failure to conduct discovery does not excuse Credit Management's failure to make complete initial disclosures. Initial disclosures are designed to reveal basic information, expedite discovery, and secure the just, speedy, and inexpensive determination of every action:

> Modern instruments of discovery serve a useful purpose, as we noted in *Hickman v. Taylor*. [. . .] They together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Credit Management's failure to disclose KeyOn's identity resulted in a game of blind man's bluff. KeyOn's identity should have been disclosed at the beginning of discovery. *See* FED. R. CIV. P. 26(a)(1)(A)(i). Instead, it was disclosed four days before the discovery cutoff date and sixteen days after McGowan could have moved to extend discovery. This conduct warrants a sanction.

## II.     Whether the Court selected an Appropriate Sanction

McGowan's Motion for Reconsideration raises a second issue: whether the court's preclusion recommendation inappropriately declined to impose a lesser sanction. Courts in the Ninth Circuit are required to consider the availability of lesser sanctions *if* a preclusion order amounts to dismissal of a claim. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012). The court's March 26, 2015, Order and Report & Recommendation (#31) did not impose a sanction that amounts to the dismissal of a claim or a defense.

The court recommended that Credit Management be precluded from introducing evidence that McGowan is or was indebted to KeyOn because Credit Management failed to disclose KeyOn's identify as required by Rule 26(a). The court did not recommend that Credit Management be precluded from introducing evidence that McGowan is or was indebted to DIGIS. *See generally* (Def.'s Summ. J. Mot. (#13) at 3) (arguing that Credit Management placed calls on behalf of DIGIS).

This sanction is appropriate under the circumstances. Credit Management withheld KeyOn's identity; it should not therefore be permitted to introduce evidence that McGowan was or is indebted to KeyOn. *See* FED. R. CIV. P. 26(a), 37(c)(1); *Procter & Gamble Co.*, 356 U.S. at 682 (stating that trial should not be "a game of blind man's bluff").

Nor is the court persuaded by Credit Management's new arguments that its delay was justified or harmless. It contends that the delay was justified because "[t]here were no KeyOn documents available at the time." (Doc. #32 at 5:6). This is irrelevant. Credit Management was required to disclose KeyOn's name, which it did not. The delay was also not harmless. It prevented McGowan from conducting discovery on an integral matter: the existence of an underlying debt to KeyOn.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Credit Management's Motion for Reconsideration (#32) is GRANTED in part and DENIED in part. The court has reconsidered its previous Order and Report and Recommendation (#31) in light of Credit Management's new arguments and its clarification of the record. After considering Credit Management's Motion for Reconsideration, the court's recommendation that Credit Management be precluded from introducing evidence that McGowan is or was indebted to KeyOn stands. Credit Management should not be precluded from introducing evidence that McGowan is or was indebted to DIGIS.

IT IS SO ORDERED.

DATED this 23rd day of April, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE