UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KIM MCGOWAN, | Case No. 2:14-cv-00759-APG-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| CREDIT MANAGEMENT LP, | (Dkt. #13, #20, #22, #31, #33) |
| Defendant. | |

This case arises out of defendant Credit Management LP's efforts to collect a debt by making numerous phone calls to plaintiff Kim McGowan's cell phone. McGowan brought this lawsuit alleging Credit Management violated the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA").

Each of the parties moved for summary judgment, and Credit Management moved to strike McGowan's motion as untimely. Additionally, Credit Management objects to the Magistrate Judge's recommended sanction against it for a discovery violation.

I accept the Magistrate Judge's recommendation and overrule Credit Management's objections. I grant in part Credit Management's motion to strike and deny McGowan's motion for summary judgment as untimely. Finally, I deny Credit Management's summary judgment motion because genuine issues of material fact remain regarding whether Credit Management violated the FDCPA and the TCPA.

**I. BACKGROUND**

In 2010, McGowan contracted with non-party Keyon for internet service at her home.[1] (Dkt. #19 at 19.) In June 2012, DIGIS purchased from Keyon certain customer accounts, including McGowan's. (*Id.*) In August 2013, McGowan's automatic payment plan ended. (*Id.*)

---

[1] As discussed below, Credit Management is precluded from offering evidence that McGowan was or is indebted to Keyon. I mention Keyon only for context.

According to Daniel Zimmerman, Vice President of Operations for DIGIS, McGowan's account had an outstanding balance. (*Id.*)

DIGIS hired Credit Management to collect the balance on McGowan's account. (*Id.*) Shortly after being hired, Credit Management began placing phone calls to attempt to recover the debt. (Dkt. #15 at 2-3.) Credit Management placed 71 calls to McGowan's cell phone between November 27, 2013 and March 6, 2014. (*Id.* at 7-11.)

Credit Management uses a phone system to make collection calls. (*Id.* at 2.) According to Nelson Wilson, Director of Compliance and Quality Assurance for Credit Management, the telephone numbers to be called on a particular day are loaded into the system in a "Calling Campaign" for that day. (*Id.*) "The Calling Campaign controls if the loaded telephone numbers can be called based on a complex set of programming that evaluates: federal and state regulations regarding debt collection; time zones relative to the then local time in the area code of the number to be called; when the last call was placed to a particular telephone number; and other internal collection scoring metrics relating to a subject account." (*Id.*) "The Calling Campaign then controls what order the telephone numbers that are eligible to be called are called, how many times calls may be placed to the same number during the same Calling Campaign, and what happens if there is a live connection." (*Id.*) Wilson states that the telephone system does not have a random or sequential number generator. (*Id.*)

According to McGowan, the phone calls did not state who was calling, the reason for the call, that the call was from a debt collector, or that any information received would be used to collect a debt. (Dkt. #19 at 19.) She also states that the phone calls were made using a pre-recorded artificial voice. (*Id.* at 20.) The calls did not give her a contact number or any means to talk to a person. (*Id.*) After receiving the calls for several months, McGowan performed an Internet search and discovered the phone number belonged to Credit Management. (*Id.* at 19.)

On March 5, 2014, McGowan's attorney sent a letter to Credit Management asserting that the calls were harassment and making a settlement offer. (Dkt. #15 at 3; Dkt. #19 at 22-25.) The next day, Credit Management called McGowan even though its account notes indicate that it had

received the letter from McGowan's attorney. (Dkt. #15 at 10.) Credit Management placed another call the next day. (*Id.* at 11.) No further calls were placed.

McGowan filed suit against Credit Management alleging violations of the FDCPA and the TCPA. (Dkt. #1.) McGowan states she did not know who the alleged debt was owed to until Credit Management asked her, during discovery in this case, to admit she owed a debt to DIGIS. (Dkt. #19 at 19.) She also avers that she did not know who DIGIS was, and she did not enter into any agreement with DIGIS. (*Id.*)

Credit Management did not identify Keyon as the original creditor in its initial disclosures or at any other time during discovery until it asked questions about Keyon during McGowan's deposition shortly before discovery closed. (*Id.* at 19, 29-30.) McGowan admitted she entered into an agreement with Keyon, but she denied she owed Keyon money, and she denied giving Keyon or DIGIS permission to call her on her cell phone to collect a debt. (*Id.* at 19-20.)

McGowan moved to compel production of additional information based on Credit Management's inadequate discovery responses. (Dkt. #11.) Magistrate Judge Ferenbach ruled that Credit Management failed to timely identify Keyon either in its initial disclosures or in response to a discovery request. (Dkt. #31 at 4-5.) He therefore recommended that I preclude Credit Management from introducing evidence that McGowan is or was indebted to Keyon. (Dkt. #31 at 10.)

Credit Management requested Judge Ferenbach reconsider his recommendation and also objected to his ruling. (Dkt. #32; Dkt. #33.) Judge Ferenbach reaffirmed his recommendation that Credit Management should be precluded from introducing evidence that McGowan is or was indebted to Keyon. (Dkt. #44 at 9.) But he clarified that Credit Management should not be precluded from introducing evidence that McGowan is or was indebted to DIGIS. (*Id.*)

Credit Management's objections to the Magistrate Judge's recommendation remain pending. Additionally, each of the parties moved for summary judgment, and Credit Management moves to strike McGowan's motion as untimely.

////

## II. ANALYSIS

### A. Objections to Magistrate Judge's Recommendation

Credit Management objects to Magistrate Judge Ferenbach's recommendation that it be precluded from offering any evidence that McGowan was or is indebted to Keyon. I conducted a de novo review of the issues set forth in Judge Ferenbach's recommendation. 28 U.S.C. § 636(b)(1). Judge Ferenbach set forth the proper legal analysis and factual basis for the decision. Credit Management did not disclose Keyon's identity in either its initial disclosures or in response to discovery. Instead, it waited until shortly before discovery closed to reveal Keyon's identity. Credit Management has not shown its failure to identify Keyon was substantially justified or harmless. Precluding Credit Management from presenting evidence that McGowan was or is indebted to Keyon is a proper remedy for Credit Management's discovery violation. I therefore accept Judge Ferenbach's recommendation and overrule Credit Management's objection.

### B. Summary Judgment

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### 1. Motion to Strike

Credit Management moves to strike McGowan's motion for summary judgment as untimely. McGowan responds that she could not have moved for summary judgment by the dispositive motion deadline because Credit Management did not comply with its discovery obligations. McGowan also argues that I should follow Local Rule 7056(e)(1) for the Bankruptcy Court for the District of Nevada, which considers a counter-motion timely if it is related to the same claim that is addressed in a summary judgment motion filed by the opposing party and is filed within the time to oppose that motion.

Under the scheduling order in this case, February 3, 2015 was the last day to file dispositive motions. (Dkt. #9 at 2.) McGowan filed her motion two weeks later, on February 17. (Dkt. #20.) She did not seek to extend the dispositive motion deadline. Additionally, as Judge Ferenbach previously noted, McGowan failed to timely move to compel or to extend the discovery cutoff date. (Dkt. #31 at 8-9.) She also did not file a Rule 56(d) motion in response to Credit Management's summary judgment motion. (*Id.*) She therefore cannot rely on Credit Management's alleged discovery failures to excuse her tardiness. I grant Credit Management's motion in part. Because McGowan's motion for summary judgment was a part of her opposition to Credit Management's motion for summary judgment, I will not strike McGowan's motion but I will deny it as untimely.

### 2. FDCPA

Count 1 of the complaint alleges Credit Management violated the FDCPA by causing McGowan's phone to ring repeatedly for the purpose of harassing or annoying, in violation of 15 U.S.C. § 1692d(5).[2] Count 1 alleges Credit Management used an automatic telephone dialing system that did not allow McGowan to speak to a live person or forced her to admit the debt in order to speak to a live person. Count 2 alleges the FDCPA violations were made with actual or

---

[2] The complaint cites to 15 U.S.C. § 1692d(4), which refers to the "advertisement of any debt to coerce payment of the debt." The reference to § 1692d(4) is a typographical error. The complaint's factual allegations reference causing a telephone to ring with the intent to annoy or harass, which is a violation of § 1692d(5).

implied knowledge, and thus McGowan is entitled to actual damages, statutory damages of up to $1,000 per claim, costs, and attorney's fees.

Credit Management moves for summary judgment on McGowan's FDCPA claims, arguing that there is no evidence Credit Management placed the calls with the intent to harass or annoy McGowan. Rather, according to Credit Management, the calls were placed in a legitimate effort to collect a debt. Credit Management contends the number of calls, standing alone, does not raise an issue of fact because there was not more than one call per day, the calls were not made at odd hours, and Credit Management did not call after McGowan instructed it not to.

McGowan responds by chronicling the number of calls she received and pointing out that she was called after her attorney sent a letter to Credit Management. She also notes that the calls were made with a pre-recorded artificial voice that (1) did not identify who was calling and (2) did not state the calls were being made in an effort to collect a debt and that any information obtained would be used for that purpose.

Title 15 U.S.C. § 1692d(5) prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Whether conduct is annoying, abusive, or harassing generally is a fact question for the jury. *Turner v. Professional Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 578 (D. N.J. 2013).

A debt collector's intent "may be inferred from circumstantial evidence such as the nature, pattern, and frequency of debt collection calls." *Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1032 (N.D. Cal. 2013); *see also Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002) ("Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls."). Some examples of harassing behavior include "immediately recalling the debtor after [she] has hung up the telephone," "continuing to call the debtor after [she] has requested that the debt collector cease and desist communication," calling the debtor at her workplace or at the homes of friends and family, calling at inconvenient hours, or calling several times in the same day or multiple times over a

short span of time. *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1227-28 (E.D. Cal. 2010).

"Court opinions differ, however, as to the amount or pattern of calls sufficient to raise a triable issue of fact regarding the intent to annoy, harass, or oppress." *Id.* at 1227; *Crockett*, 929 F. Supp. 2d at 1032 (stating there is no "bright-line rule"). Indeed, courts vary significantly regarding what conduct suffices to show intent. *Compare Turner*, 956 F. Supp. 2d at 579 (issues of fact on intent raised by at least 133 calls in five months, multiple calls and messages per day, and calling back shortly after consumer hung up); *Crockett*, 929 F. Supp. 2d at 1032-33 (22 calls states a plausible inference of intent to harass); *Akalwadi v. Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 506 (D. Md. 2004) (28 calls over two-month period raises issue of fact on intent), *with Beeders v. Gulf Coast Collection Bureau*, 796 F. Supp. 2d 1335, 1338 (M.D. Fla. 2011) (finding, after a bench trial, that 40 calls in four months was not done with intent to harass, annoy, or abuse); *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1227, 1232 (D. Kan. 2011) (149 calls in two months did not raise issue of fact on intent where not coupled with "other egregious conduct to evince an intent to annoy, abuse or harass"); *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1303, 1305 (M.D. Fla. 2010) (57 calls, sometimes 7 per day, did not raise an issue of fact as to intent).

Viewing the facts and reasonable inferences in the light most favorable to McGowan, a reasonable jury could find that Credit Management acted with the intent to annoy, harass, or abuse. Credit Management made 71 calls from late November through early March. The calls were not placed at inconvenient hours nor did Credit Management call multiple times in a single day, but calls were placed almost daily.

Additionally, McGowan has presented evidence that Credit Management engaged in other conduct the FDCPA prohibits. For example, Credit Management apparently placed two calls after it had received the letter from McGowan's attorney. *See* 15 U.S.C. § 1692c(a)(2). She also presents evidence that the calls (1) did not identify who was calling and (2) did not state that the

calls were to collect a debt and that any information obtained would be used for that purpose.[3] *See* 15 U.S.C. § 1692d(6), 1692e(11). And she presents evidence that she did not owe any debt to Keyon or DIGIS. *See* 15 U.S.C. § 1692e(2)(A). Coupled with the volume and pattern of calls, a reasonable jury could find this conduct demonstrates an intent to annoy, harass, or abuse. I therefore deny Credit Management's summary judgment motion on McGowan's claim under the FDCPA in Count 1.[4]

### 3. TCPA

Count 3 of the complaint alleges that Credit Management violated the TCPA by calling McGowan on her cell phone without prior written permission, by calling at times not authorized by law, and by harassing her by calling on a daily basis. Count 3 also alleges Credit Management violated the TCPA by using an automatic telephone dialing system to place the calls.

Credit Management moves for summary judgment on this claim, arguing that McGowan consented to calls to her cell phone when she provided her phone number to Keyon regarding her credit account, and DIGIS then bought that account. Alternatively, Credit Management contends that it does not use an automatic telephone dialing system.

---

[3] McGowan moves for summary judgment on her FDCPA claim. She argues that there is no genuine issue of material fact that Credit Management made two calls after receiving the letter from her attorney. She thus argues Credit Management violated 15 U.S.C. § 1692c(a)(2), which prohibits collection calls to a person known to be represented by counsel. I have already denied McGowan's motion as untimely. But even if I considered it, she would not be entitled to summary judgment because there are no factual allegations in the complaint that Credit Management violated § 1692c by contacting her after it knew she was represented by an attorney, nor does the complaint cite to that statutory provision.

McGowan also asserts that Credit Management violated the FDCPA by not identifying the caller and by not giving warnings that the call was for debt collection purposes. None of these factual allegations or statutory citations is in the complaint. McGowan never moved to amend her complaint to add these allegations. As a result, Credit Management did not have fair notice that it was being accused of this conduct. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))). I therefore consider the evidence that (1) Credit Management called McGowan twice after her attorney sent the letter, (2) Credit Management did not identify itself on the calls, and (3) Credit Management did not provide warnings that it was making a debt collection call only as evidence that Credit Management acted with the intent to harass, abuse, or annoy, and not as separate actionable violations of the FDCPA.

[4] Count 2 of the complaint lists remedies for violations of Count 1. It is not a separate claim.

McGowan responds that Credit Management relies on only the unsupported, self-serving affidavits of Zimmerman (who states McGowan owed money on her account) and Wilson (who describes Credit Management's phone system). McGowan argues that these affidavits do not refute her affidavit stating that (1) she did not give Credit Management, DIGIS, or Keyon express written consent to make the calls to her cell phone and (2) Credit Management used a pre-recorded artificial voice that did not advise who the calls were coming from and did not advise that the calls were for debt collection purposes. She also argues Wilson's affidavit creates issues of fact regarding whether Credit Management uses an automatic telephone dialing system.

Credit Management replies that McGowan's argument that Credit Management used a pre-recorded artificial voice is not part of her TCPA claim as alleged in the complaint. Rather, Credit Management argues, McGowan alleged the use of a pre-recorded artificial voice only in connection with her FDCPA claim.

It is unlawful to place a call to a cell phone "using any automatic telephone dialing system or an artificial or prerecorded voice" without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The Ninth Circuit has identified the three elements of a TCPA claim as: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system [or a pre-recorded or artificial voice]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

There is no dispute that Credit Management called McGowan's cell phone. However, the parties dispute whether Credit Management used an automatic telephone dialing system, whether McGowan gave prior express consent, and whether McGowan alleged the use of a pre-recorded or artificial voice as part of her TCPA claim.

### a. Automatic Telephone Dialing System

The statute defines an "automatic telephone dialing system" to mean:

equipment which has the capacity--
    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
    (B) to dial such numbers.

47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC") further defined "automatic telephone dialing system" to include predictive dialers. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Id.* at 14091 (internal footnote omitted). The FCC's decision to include predictive dialers in the definition of an automatic telephone dialing system was based on "the evolution of the teleservices industry" which "has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the *capacity* to dial numbers without human intervention." *Id.* at 14092 (internal footnote omitted).

In a 2008 Declaratory Ruling, the FCC "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 566 (Jan. 4, 2008). The FCC made clear that this ruling applies to debt collectors by stating:

> With this ruling, however, creditors and debt collectors may use predictive dialers to call wireless phones, provided the wireless phone number was provided by the subscriber in connection with the existing debt. We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers, and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.

*Id.* at 567 (internal footnotes omitted).

Congress delegated authority to the FCC to prescribe regulations implementing the TCPA. 47 U.S.C. § 227(b)(2). The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals. *See* 28 U.S.C. § 2342; *Pacific Bell v. Pac West Telecomm*, 325 F.3d 1114, 1125 (9th Cir. 2003).

Viewing the facts and reasonable inferences in the light most favorable to McGowan, genuine issues of fact remain regarding whether Credit Management used an automatic telephone dialing system. Wilson describes Credit Management's system as having numbers loaded into it for a particular day. Thus, the system can store numbers for at least a day. Wilson also states that the Calling Campaign controls the order the numbers are called and "what happens if there is a live connection." (Dkt. #15 at 2.) A reasonable inference from this description is that the system, not a human being, dials numbers from a list of numbers. Additionally, it is reasonable to infer from Wilson's description that Credit Management's system is using a predictive dialer when it determines "what happens if there is a live connection." And McGowan presents the DIGIS customer agreement that suggests DIGIS contracts with collection companies who will use auto-dialers. (Dkt. #11-1 at 21); *see Lee v. Credit Management, LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012) (finding a genuine issue of fact as to whether a collection agency used a predictive dialer where a contract between the creditor and the collections agency showed the agency agreed that it would contact the creditor's customers by mail and predictive dialer).

Thus, genuine issues of fact remain regarding whether Credit Management's system uses a predictive dialer and has the capacity to dial telephone numbers from a list without human intervention. If it does, it qualifies as an automatic telephone dialing system under the FCC's interpretation of that term. *Meyer*, 707 F.3d at 1043 (stating that the defendant's use of predictive dialers fell "squarely within the FCC's definition of 'automatic telephone dialing system'"); *see also Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410-11 (M.D. Pa. 2014) (finding a system that had "the capacity to store and dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically designed to receive such a list" was an automatic telephone dialing system); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 655 (N.D. W. Va. 2014) ("Simply put, DISH's equipment (the hardware dialer and software program) is a predictive dialer under the FCC's orders if it makes calls from a stored list of phone numbers without human intervention.").

////

### b. Prior Express Consent

The FCC defines "prior express consent" to include consumers "who knowingly release their phone numbers" because they have "in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd 8752, 8769 (Oct. 16, 1992). "Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one to which the called party wishes to be reached." *Id.* The FCC later made clear this interpretation applies in the context of debt collection calls: "We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 564 (Jan. 4, 2008). The FCC clarified that "prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at 564-65.

Additionally, the FCC concluded that "the creditor should be responsible for demonstrating that the consumer provided prior express consent" because the "creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications." *Id.* at 565. Consequently, the FCC places "the burden . . . on the creditor to show it obtained the necessary prior express consent." *Id.*

In *Meyer*, the Ninth Circuit stated that the lack of prior express consent is an element of a TCPA claim, suggesting that the consumer bears the burden of proving she did not give prior consent. 707 F.3d at 1043. But *Meyer* was considering a motion for injunctive relief and thus was considering the plaintiff's likelihood of success on the merits. *Id. Meyer* did not purport to invalidate the FCC's 2008 Declaratory Ruling, and in fact it cited that Ruling approvingly on what constitutes prior consent. *Id.* at 1042. Consequently, the FCC's order is controlling for purposes of interpreting the TCPA because no court of appeals has invalidated it. As a result,

Credit Management bears the burden of establishing that McGowan gave prior consent to be contacted on her cell phone about the debt. *See Grant v. Capital Management Services, L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011) (stating that "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof" (citing 23 FCC Rcd 559, 565 (Jan. 4, 2008)); *Thrasher v. CMRE Financial Services, Inc.*, No. 14-cv-1540 BEN (NLS), 2015 WL 1138469, at *6 (S.D. Cal. 2015). *But see Smith v. Microsoft Corp.*, 297 F.R.D. 464, 472 n.2 (S.D. Cal. 2014) (stating that *Meyers* listed lack of consent as an element of a TCPA claim, so it is not an affirmative defense).

      Credit Management has not met its initial burden of showing no genuine issue of material fact remains that McGowan gave prior consent. Credit Management has not produced any competent evidence that McGowan provided her cell phone number to either Keyon or DIGIS during the transaction that resulted in the debt owed. Credit Management has never produced any agreement between McGowan and Keyon, nor has it produced any testimony from a witness with personal knowledge that McGowan provided her cell phone number when signing up for Internet service with Keyon. The only evidence Credit Management submits in support of its summary judgment motion on this point is the declaration of Zimmerman, who states that "[i]n signing up for broadband Internet service with Keyon, Plaintiff provided certain information," including her cell phone number. (Dkt. #14 at 2.) Zimmerman does not adequately explain how he would have personal knowledge of that fact. Zimmerman states he has "reviewed the account documents for Plaintiff Kim McGowan." (Dkt. #14 at 2.) But no documents have been produced showing McGowan provided her cell phone number when she signed up for Internet service. Zimmerman is an employee of DIGIS, not Keyon, and McGowan signed up for Internet service with Keyon years before DIGIS purchased Keyon's accounts. Thus, it is unclear on what basis Zimmerman could competently testify about how or when Keyon obtained McGowan's cell phone number. Because that is the only evidence on prior consent that Credit Management offers to support its motion, it has not met its initial burden on summary judgment.

Even if Credit Management had satisfied its initial burden, McGowan's opposition raises a genuine issue of fact precluding summary judgment. McGowan admits she signed up for Internet service with Keyon, but she denies she gave Keyon or DIGIS permission to call her on her cell phone to collect a debt. (Dkt. #19 at 19-20.) Credit Management produces no evidence that McGowan has admitted she provided her cell phone number to Keyon at the time she signed up for the Internet service.[5] Therefore, genuine issues of fact remain, and I deny Credit Management's summary judgment motion. *See Lee*, 846 F. Supp. 2d at 731 (finding issues of fact on consent where the defendant "offer[ed] no explanation for how [the original creditor] obtained the number, nor [did] it offer any purchase agreements, sales slips, and credit applications that reflect that [the plaintiff] provided them with the number" (internal quotation marks omitted)).

### c. Pre-recorded or Artificial Voice

Under § 227(b)(1)(A)(iii), Credit Management may be liable if it used (1) an automatic telephone dialing system, (2) an artificial voice, or (3) a pre-recorded voice. However, Credit Management argues that McGowan did not allege in her complaint as part of her TCPA claim that Credit Management used a pre-recorded artificial voice. Credit Management contends McGowan made those allegations only in connection with her FDCPA claim.

The complaint alleges that Credit Management "used a robo-calling, automatic dialing phone system that did not allow plaintiff to speak to an individual, and/or forced plaintiff to admit the debt in order to speak to a representative." (Dkt. #1 at 3.) These allegations are under the heading of McGowan's FDCPA claim. (*Id.*) They are not repeated under the heading for her TCPA claim, and she does not include a general statement that her TCPA claim incorporates all other allegations in the complaint.

Nevertheless, the complaint's allegations gave fair notice that McGowan's TCPA claim rested on these allegations in addition to the allegation that Credit Management used an automatic telephone dialing system. Fed. R. Civ. P. 8(a)(2). Pleadings are construed liberally to align with

---

[5] Even if lack of prior consent were an element of McGowan's TCPA claim that she bears the burden of proving, she has presented evidence raising an issue of fact that she did not give prior consent because she denies under oath that she did so.

the policy preference to try cases on their merits rather than disposing of them on pleading technicalities. *See Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1482 (9th Cir. 1986); Fed. R. Civ. P. 8(d)(1) (stating "[n]o technical form [of pleading] is required"); Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). The mere fact that the factual allegation was not under the heading for the TCPA claim is a technicality. The TCPA prohibits the use of a pre-recorded or artificial voice, so McGowan's allegations combined with her assertion of a TCPA claim suffice to put Credit Management on fair notice of the bases for her claim.

McGowan has presented evidence in the form of her affidavit that the calls were made using a pre-recorded artificial voice. She therefore has raised a genuine issue of material fact as to whether Credit Management violated § 227(b)(1)(A)(iii) by calling her cell phone with a pre-recorded artificial voice without her prior consent. I therefore deny Credit Management's motion to dismiss her TCPA claim.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Credit Management, LP's motion for summary judgment **(Dkt. #13) is DENIED**.

IT IS FURTHER ORDERED that plaintiff Kim McGowan's motion for summary judgment **(Dkt. #20) is DENIED**.

IT IS FURTHER ORDERED that defendant Credit Management, LP's motion to strike **(Dkt. #22) is GRANTED IN PART** in that I deny plaintiff Kim McGowan's motion as untimely. I do not strike the filing from the record.

IT IS FURTHER ORDERED that Magistrate Judge Ferenbach's report and recommendation **(Dkt. #31) is accepted** and defendant Credit Management, LP's objection **(Dkt. #33) is overruled**. Credit Management, LP is precluded from offering any evidence at trial that plaintiff Kim McGowan is or was indebted to Keyon.

DATED this 24th day of September, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE